# IN THE COURT OF APPEALS OF IOWA

No. 20-1695
Filed January 12, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONTE GRUBBS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

        Donte Grubbs appeals his conviction for first-degree robbery. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

Someone robbed Sam's Food, a convenience store in Davenport. A jury found Donte Grubbs guilty of the robbery. On appeal, Grubbs claims (1) the district court improperly admitted evidence of other bad acts and (2) the verdict was not supported by sufficient evidence. We affirm.

**I. Background Facts & Proceedings**

One evening, around 7:00 p.m., someone walked into Sam's Food and robbed the till. The store's security camera recorded the robbery. The store's owners turned the footage over to the police. An officer recognized the robber as Grubbs.

Police obtained a warrant for Grubbs's phone records. The records placed Grubbs's phone in the vicinity of Sam's Food at the time of the robbery.

Police also obtained security footage from an apartment complex in Moline, Illinois. This footage—captured under two hours after the Sam's Food robbery— shows a person wearing clothes that are similar to those worn by the robber in the Sam's Food footage. The footage shows the person entering an apartment. The mother of two of Grubbs's children lives in that apartment.

The State charged Grubbs with the robbery. At trial, the owner of Sam's Food identified Grubbs as the robber. The State also introduced the video footage from Sam's Food and the apartment complex, as well as the information gleaned from Grubbs's phone records.

In addition, the State offered a surveillance video from a Burger King in Cedar Rapids. It had been robbed earlier the same day. And the Burger King video showed a robber who appeared similar to the Sam's Food robber. Both

robbers wore similar black shirts, similar black shoes, similar stone-washed and distressed jean shorts, and so on. The State's theory was that Grubbs robbed the Burger King in Cedar Rapids, then travelled to Davenport to rob Sam's Food, and then visited the mother of his children in Moline. This theory was bolstered by Grubbs's cell records, which showed his phone was near Cedar Rapids at the time of the Burger King robbery—before the phone travelled to Davenport in time for the Sam's Food robbery.

Grubbs argued that evidence of the Burger King burglary should be excluded. The district court ruled the evidence was admissible but only for the limited purpose of proving identity. And the court instructed the jury that, although they had heard evidence of "other wrongful acts alleged to have been committed by" Grubbs, Grubbs "is not on trial for those acts." This evidence—the court explained—could be considered to show the "identity of [the] person charged and for no other purpose."

The jury found Grubbs guilty as charged. This appeal followed.

## II. Standard of Review

We review the admission of other-bad-acts evidence for an abuse of discretion. *State v. Martin*, 704 N.W.2d 665, 671 (Iowa 2005). We review "sufficiency of evidence claims for the correction of errors at law." *State v. Jones*, ___ N.W.2d ___, ___, 2021 WL 5751464, at *1 (Iowa 2021).

> In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence. Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and

presumptions that may fairly and reasonably be deduced from the record evidence."  "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding."

*Id.* (citations omitted).

## III. Discussion

### A. Sufficiency of the evidence

We begin with Grubbs's challenge to the evidence supporting the verdict. Grubbs argues that the State failed to present substantial evidence that he was the robber of Sam's Food.  We disagree.  Indeed, the State had a strong case against Grubbs.  The owner of Sam's Food—who was working the till during the robbery—identified Grubbs as the robber of the till.  The owner's testimony was consistent with the store's high-quality security camera footage of the incident.  The same footage allowed a detective to identify Grubbs as the robber based on previous interactions.  Plus the State provided cell phone evidence that verified Grubbs's phone was in the vicinity when the robbery occurred.  And the Moline apartment evidence placed Grubbs in the Quad Cities near the time of the robbery in clothing similar to the robber's.  Viewing the sum of evidence introduced "in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence,'" we conclude the verdict was adequately supported.  *Id.* (citation omitted).

### B. Evidence of the Burger King robbery

Next, we turn to Grubbs's evidentiary objection.  As noted, our review is for abuse of discretion.  *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).  And even if

the trial court abused its discretion, we will not reverse unless Grubbs was prejudiced. *See id.*

Grubbs asserts the admission of the Burger King video violated Iowa Rule of Evidence 5.404(b)(1), which prohibits the introduction of "a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But evidence of other acts may be admissible for some other legitimate purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

We apply a three-part test to this sort of evidence. *Putman*, 848 N.W.2d at 8. First, we ask whether the evidence is relevant to a "legitimate disputed factual issue" in the case. *Id.* at 9. Then, we consider whether there is "clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* (citation omitted). And finally, if both of the first two prongs are satisfied, we consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.*

Applying this test here, we find no abuse of discretion. First, because Grubbs disputed that he was the Sam's Food robber, identity was a disputed issue in the case. So evidence of identity was relevant in the ordinary sense.

We recognize, though, that when "evidence of prior bad acts is offered for the purpose of proving identity," our supreme court has "imposed a more demanding test than the general relevancy test." *Id.* at 11. "To permit the inference that similar acts establish the same person committed both acts," our supreme court has "required that the other acts must be 'strikingly similar' or of a 'unique

nature.'" *Id.* (citation omitted). We think this standard is met here. These two robberies are "strikingly similar" because—as the video evidence shows—(1) both robbers wore a plain black t-shirt; (2) both wore black sneakers; (3) both wore distinctive stone washed and distressed shorts; (4) both appear to have robust sideburns; (5) both had similar builds; (6) both took money from cash registers; and (7) both used a handgun. Plus the two robberies occurred close together in time (a couple of hours) and space (a short drive from Cedar Rapids to Davenport). And the State's cell phone evidence—which showed Grubbs's phone travelling from Cedar Rapids to Davenport between the robberies—creates an extraordinarily (if not uniquely) strong link between the two events.

We turn next to the question of clear proof. "[P]roof of prior bad acts is clear if it prevents the jury from speculating or inferring from mere suspicion." *Id.* at 13. We think this standard was met. The jury did not need to speculate as to whether the Burger King robber was also the Sam's Food robber. The video evidence *showed* numerous similarities between the two robbers' appearances and actions. Plus an officer identified the Sam's Food robber as Grubbs. So if the jury concluded the two robbers were the same person, they could reasonably connect both robberies to Grubbs. Moreover, as in *Putman*, the trial court gave a limiting instruction that evidence of other wrongful acts "must be shown by clear proof." *See id.* (noting "in its limiting instruction, the district court instructed the jury that this evidence must be shown by clear proof"). All things considered, we believe there was clear proof for the jury to conclude Grubbs was the Burger King robber without speculating or inferring from mere suspicion.

Finally, we turn to the balancing of probative value against the danger of unfair prejudice. This balancing is "not an exact science," and we give a "great deal of leeway to the trial judge who must make this judgment call." *Id.* at 10 (quoting *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006)). "The district court's determination" of this issue "is clothed with discretion and will be reversed only upon a showing of clear abuse." *State v. Walker*, 935 N.W.2d 874, 883 (Iowa 2019) (Appel, J., specially concurring).

We see no abuse here. The State was obligated to prove Grubbs's identity as the Sam's Food robber beyond a reasonable doubt. And Grubbs's main argument at trial was that the State had failed to provide sufficient "identification" evidence, that is, evidence that he was "the perpetrator" in the Sam's Food robbery.[1] So we cannot say the State had no need for the Burger King evidence. Also, as explained, the evidence of Grubbs's involvement in the Burger King robbery was clear. This enhanced its probative value. *See Putman*, 848 N.W.2d at 14 (noting clear proof is a "factor" that "supports admission"). And we do not believe its probative value was "substantially outweighed by the danger of unfair prejudice." *See id.* (quoting Iowa R. Evid. 5.403). Of course, as in all cases involving other-bad-acts evidence, there was some risk that the jury would convict Grubbs of the Sam's Food robbery solely to punish Grubbs for the Burger King robbery. But we think this risk was low, in part because *other* strong evidence connected Grubbs to the Sam's Food robbery. Moreover, the district court wisely

---

[1] Indeed, as discussed, Grubbs continues to challenge whether the State's case was strong enough to survive a motion for acquittal, much less to obtain a jury verdict.

instructed the jury that Grubbs was "not on trial" for other wrongs. The court also instructed that evidence of other wrongs could only be considered to show the "identity of [the] person charged" in the Sam's Food robbery "and for no other purpose." We believe these instructions served as "an antidote for the danger of prejudice" to Grubbs. *Id.* at 15; *see also State v. Rodriquez*, 636 N.W.2d 234, 243 n.2 (Iowa 2001) (noting "[p]rejudice to the defendant can be limited with the use of a cautionary instruction explaining the purpose for which the prior acts evidence may be used" and advising "trial courts would be wise to give such an instruction to the jury, even if not specifically requested by the defendant, whenever bad acts evidence is introduced for a limited purpose").

So we do not conclude the district court abused its broad discretion. And even if the Burger King evidence should have been excluded, we conclude the error was harmless and—therefore—cannot provide "a basis for relief on appeal." *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). For one thing, as the State notes, the evidence played a relatively "modest role at trial."[2] Plus the district court's cautionary instruction mitigated the risk of prejudice. *See State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017). Also—and perhaps most importantly—the State's case was strong enough that we do not believe the Burger King evidence drove the verdict.

---

[2] Only one witness—a Burger King assistant manager—testified about that burglary. This testimony spanned about eight pages of a trial transcript exceeding 250 pages. No witness identified Grubbs as the Burger King robber. That determination was left for the jury to make after reviewing the surveillance video. The relevant footage spans about one minute and sixteen seconds. The robber is visible during the last twenty-one seconds.

Because Grubbs has not shown reversible error, we affirm.

**AFFIRMED.**